## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL THOMPKINS, B83919,      ) | |
|      ) | |
|          **Plaintiff,**      ) | |
|      ) | |
| **vs.**      ) | |
|      ) | |
| **CENTURION MEDICAL SERVICES,**      ) | |
| **DR. RYAN SUTTER**[1],      ) | **Case No. 26-cv-543-RJD** |
| **WARDEN WILLS,**      ) | |
| **NP MOLDENHAUER,**      ) | |
| **WEXFORD HEALTH SOURCES,**      ) | |
| **NP ZIMMER,**      ) | |
| **DR. SIDDIQUI**[2],      ) | |
| **NURSE WALTER,**      ) | |
|      ) | |
|          **Defendants.**      ) | |

## <u>MEMORANDUM AND ORDER</u>

**DALY, Magistrate Judge:**

Plaintiff Michael Thompkins, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Big Muddy River Correctional Center (Big Muddy), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center.  (Doc. 1).  Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for headaches, a pituitary tumor, glaucoma, and vision problems. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[3]  Under Section 1915A, the Court is required to screen prisoner complaints to

---

[1] In the case caption, Plaintiff referred to "Dr. Ryan Sutter" but in the listing of Defendants, he referred to "Ryan Sutterer."  (Doc. 1 at 1).  Throughout the factual allegations he referenced Dr. Sutter, so the Court refers to this defendant as "Dr. Sutter."

[2] In the case caption, Plaintiff referred to "Dr. Sidieui" but in the listing of Defendants and in the complaint he referenced "Dr. Siddiqui."  (Doc. 1 at 1-2).  The Court refers to this Defendant as Dr. Siddiqui.

[3] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections, Wexford, and Centurion, to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandums of Understanding between this Court and these agencies.

filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Plaintiff alleges that in 2018 he began to experience bad headaches and blurred vision, so he sought medical care at Menard. (Doc. 1 at 5). He saw Defendant Zimmer on multiple occasions and alleges Zimmer prescribed ineffective medication. (*Id.* at 5-7). Plaintiff also saw Defendants Moldenhauer and Siddiqui for the same issues and received more ineffective medication. (*Id.* at 5, 7-8). He alleges that the ineffective treatment continued for years as he suffered from headaches and progressive vision loss. In addition to Zimmer, Moldenhauer, and Siddiqui, Plaintiff alleges he saw Dr. Sutter in early February of 2022. (*Id.* at 8). He claims that despite reporting headaches and blurry vision, Sutter continued the same ineffective medications. He had the same outcome at a second visit with Sutter in late May of 2022. (*Id.* at 8).

Eventually in November or December of 2022 an MRI showed a tumor and Plaintiff underwent surgery. (*Id.* at 5). Plaintiff also alleges that in November or December of 2023[4] an outside doctor diagnosed him with a pituitary tumor and on January 5, 2023, he had surgery to remove the tumor. (*Id.* at 6). Plaintiff claims that the entire tumor could not be removed at once, so he was advised to let Menard medical staff know if he had new headaches or blurry vision so he could undergo further assessment or surgery. (*Id.*).

---

[4] Read in the context of Plaintiff's complaint, it seems most likely the tumor was diagnosed in November or December of 2022 as he initially said, and that he received surgery in January of 2023.

Plaintiff claims that as a result of the tumor he developed glaucoma. (*Id.* at 8-9). He received eyedrops from January of 2023-January of 2024, but he has not otherwise received glaucoma care. He alleges that a January of 2024 MRI "was looking good," but he was advised to seek further care if he had headaches or dizziness. (*Id.* at 9). Plaintiff alleges a sick call slip was ignored for months. He saw Dr. Sutter about headaches and dizziness in March of 2025, but it was not addressed, and he alleges in June of 2025 Defendant Nurse Angie Walter gave medication that did not work. (*Id.*).

Plaintiff alleges Defendant Wills is responsible for deliberate indifference because Plaintiff sent him numerous letters in 2025 concerning Plaintiff's medical condition that did not get responses. (*Id.* at 10). Without any response, Plaintiff faults Wills for turning a blind eye. (*Id.* at 11). As for Wexford, Plaintiff alleges that Wexford has a practice in place amongst staff to prolong and deny adequate care to save money. (*Id.*). Plaintiff also faults Centurion, the new medical contractor for IDOC, for prolonging or denying follow-up care for his glaucoma, pituitary tumor, and endocrinology. (*Id.* at 12). He alleges he has filed grievances as recently as November of 2025, but he still has not received any follow-up. (*Id.*).

Plaintiff alleges that all defendants knew or should have known of the risks posed by delaying care because he informed them through multiple appointments and requests for care. (*Id.* at 13). Plaintiff adds that in September of 2025 he had a second surgery, which he believes he only received because an outside doctor did not ignore him. (*Id.* at 13). He alleges he wrote at least nine grievances and that he faults Defendant Walter for failing to make an urgent referral for nine months. (*Id.* at 14). He elaborates that Walter knew of his history of the pituitary tumor and headaches because she had seen him in 2018 on initial report, in 2023 when he returned from

surgery, and then in 2025 when he complained of recurring symptoms. (*Id.* at 15). He claims that rather than investigating the issue, Walter prescribed ineffective medication. (*Id.*).

Plaintiff seeks monetary damages, and injunctive relief enjoining Menard and IDOC employees from violating his rights in the future. (*Id.* at 16). In support of the complaint, Plaintiff submitted over 100 pages of grievances and excerpts of records. (Doc. 1-1).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Zimmer, Moldenhauer, Siddiqui, and Sutter for the pre-surgical care from 2018-January of 2023;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Sutter and Walter for their denial or delay of follow-up care in 2025 when Plaintiff again began to report headaches and dizziness;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendant Wills for turning a blind eye to Plaintiff's multiple letters in 2025;**

**Claim 4:** ***Monell* claim against Wexford and Centurion for maintaining practices for staff to delay or deny care to cut costs.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

<u>**Analysis**</u>

The applicable statute of limitations period for actions brought pursuant to 42 U.S.C. § 1983 is a state's period for personal injury torts. *See Kalimara v. Ill. Dept. of Corrections*, 879

F.2d 276, 277 (7th Cir. 1989).  In Illinois, where the events in Plaintiff's complaint occurred, that period is two years.  *See Woods v. Illinois Dept. of Children and Family Svcs.*, 710 F.3d 762, 765-766 (7th Cir. 2013); 735 ILCS § 5/13-202.  Illinois recognizes equitable tolling of the two-year period for an inmate to pursue administrative exhaustion of a claim at the institutional level.  *See Terry v. Spencer*, 888 F.3d 890, 894 (7th Cir. 2015).  A court may sua sponte dismiss a case at § 1915A review if the applicability of the statute of limitations is "so plain from the language of the complaint…that it renders the suit frivolous."  *Id.* at 894; *Dickens v. Illinois*, 753 Fed. App'x 390 (7th Cir. 2018) (a court may dismiss a complaint upon screening if it is clearly barred by the statute of limitations).  The Seventh Circuit has held that a § 1983 deliberate indifference medical injury claim accrues when the plaintiff knows of his physical injury and its cause.  *See Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013).  Where the claim alleges a continuing violation regarding a refusal to treat a condition, the statute of limitations begins to accrue when treatment is provided or the inmate is released.  *See Heard v. Sheahan*, 253 F.3d 316, 318-319 (7th Cir. 2001).

Here, Plaintiff's initial round of medical complications and the care he sought from Defendants Zimmer, Moldenhauer, Siddiqui, and Sutter transpired from 2018-late 2022, and he received surgery on January 5, 2023.  Plaintiff indicated that after surgery an MRI in 2024 was "all good," and he did not report new problems until early 2025.  Plaintiff did not file this action until April of 2026, more than three years after the initial discovery of his pituitary tumor and the first surgery.  The recurrence of Plaintiff's symptoms at some point in 2025 did not re-open the door for him to litigate years-old claims about his initial care and diagnosis from 2018-2022.  The 2023 surgery caused the statute of limitations to accrue.  Thus, the filing of this suit in April of 2026 about care prior to Plaintiff's January 2023 surgery was too late.  The Court finds it appropriate to dismiss all allegations pertaining to any defendants that deal with Plaintiff's initial

bout of headaches, dizziness and vision trouble prior to his surgery in January of 2023 as barred by the statute of limitations. Thus, Claim 1 is dismissed in full.

It is also worth noting that Plaintiff mentions limited glaucoma care with eyedrops from January of 2023-January of 2024. He does not attribute this particular treatment (or allegedly inadequate treatment) to any of the specific defendants. If he did, contentions about this one-year course of treatment may still be barred by the statute of limitations because the treatment allegedly ended in January of 2024. By contrast, if there was a persistent need for glaucoma care after the surgery through the present, there may be a continuing violation theory separate from the pituitary tumor. In any event, the Court does not need to resolve this particular issue because Plaintiff did not associate the inadequate glaucoma care with any specific named defendant.

In what the Court has designated as Claim 2, Plaintiff complains that when he reported a reoccurrence of headaches, dizziness, and vision problems in March of 2025 to Dr. Sutter, and in June of 2025 to Nurse Walter, both providers failed to act despite knowing his history of a pituitary tumor and vision complications. These assertions are sufficient to proceed beyond initial review against Sutter and Walter. Plaintiff alleges after at least nine months of seeking care for his recurrent symptoms, he had another surgery. This plausibly suggests that he presented to Sutter and Walter with a serious medical need, and that they may have exhibited deliberate indifference to his need by refusing care, delaying it, or providing treatment known to be ineffective.

In Claim 3, Plaintiff alleges that in 2025 he sent a series of letters to Warden Wills, and he faults Wills for turning a blind eye and not responding. A letter writing campaign is not always enough to give rise to § 1983 liability against a high-ranking public official. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (a letter-writing campaign does not give rise to damages claims against officials such as the warden who are entitled to relegate the provision of

good medical care to the prison's medical staff).  However, the Seventh Circuit has found that highly detailed correspondence about a serious medical issue may give rise to liability.  *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (officials who received coherent and highly detailed grievances and correspondence about an objectively serious medical condition may be deliberately indifferent if they turned a blind eye to allegedly unconstitutional treatment).  Here, Plaintiff's allegations about his five letters to Wills are vague.  At most he says he mentioned day-to-day headaches and blurry vision, but he goes on to allege Wills just "knew or should have known" he was not receiving adequate care. (Doc. 1 at 9, 11).  He does not indicate he informed Wills of his history of pituitary issues, nor does he say he informed Wills that he was instructed to return for further care if his problems reemerged.  The facts alleged against Wills in association with the correspondence are simply too vague to support a plausible inference that Wills turned a blind eye at this juncture, and Claim 3 is dismissed without prejudice.

Finally, in Claim 4 Plaintiff asserts that Wexford and Centurion, both medical contractors for the Illinois Department of Corrections, harmed him by having providers maintain a practice of denying or delaying care to save money.  Wexford and Centurion are both private corporations that cannot be held liable under § 1983 unless the alleged violation was caused by an unconstitutional policy or custom of the corporation itself.  *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Thus, under *Monell*, for Plaintiff to recover from either contractor, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority.  *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).  In other words, a plaintiff must

show that "systemic and gross deficiencies in . . . [IDOC's] medical care system," caused his injury, and also that "a policymaker or official knew about these deficiencies and failed to correct them." *Daniel v. Cook Cnty.*, 833 F.3d 728, 735 (7th Cir. 2016). Alternatively, a plaintiff must show that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). The rigorous causation standard for *Monell* claims demands that an inmate establish a direct causal link between the challenged municipal action and the violation of his rights. *Dean*, 18 F.4th at 235.

Here, Plaintiff's assertions against Wexford and Centurion are entirely threadbare. Though he alleges that he experienced delayed care, and that the contractors' staff have a practice of delaying care to cut costs, he identifies no causal link between the two propositions. He also has not identified similar experiences of others, which would go towards establishing the existence of a widespread practice. Plaintiff's assertions against Wexford and Centurion are purely speculative. Furthermore, Plaintiff's allegations all pertain to care he sought at Menard through 2025, but by the time he filed this complaint in 2026 he was housed at Big Muddy. He has not said enough about his more recent requests for care to suggest how Wexford or Centurion might be causing a persistent problem. Given the lack of detail, Claim 4 is now dismissed without prejudice for failure to state a claim.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel wherein he indicates he has some high school education, English is not his primary language, and his case is complex. (Docs. 3, 4). He indicates he wrote letters to at least 8 attorneys and attached copies of several denials to his complaint (Doc. 1-1 at 92-94). Two of the denial letters are from 2023, and one is from 2025.

When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff provided proof of his efforts, but some of that correspondence is quite dated. If Plaintiff renews a request for counsel later, he should make new efforts in 2026 to secure counsel, and he should provide proof that he contacted at least 3 attorneys.

As for Plaintiff's ability to maintain the case, the Court finds that Plaintiff is competent at this early juncture to proceed. Though medical cases can be complex for pro se litigants to handle on their own, the next steps will be closely guided by the Court. An early focus of inmate-filed litigation is often the exhaustion of administrative remedies, a topic which most pro se litigants can adequately handle on their own because they possess copies of their grievances and knowledge of the grievance process. Plaintiff has already indicated familiarity with this issue by his inclusion of many relevant records and grievances in his complaint. Accordingly, the Court finds that he is competent at this early juncture to proceed without assistance and his Motions (Docs. 3 and 4) will be denied without prejudice.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 2** of the Complaint (Doc. 1) survives against Defendants Dr. Sutter and Nurse Walter. By contrast, **Claim 1** is dismissed as barred by the statute

of limitations, and Claims 3 and 4 are dismissed for failure to plead a sufficient claim.  The Clerk
of Court shall **TERMINATE** Defendants Zimmer, Moldenhauer, Siddiqui, Wills, Wexford Health
Sources, and Centurion Health Sources.

The Clerk of Court is **DIRECTED** to prepare for Defendants Dr. Ryan Sutter and Nurse
Angie Walter: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and
(2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a
copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of
employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service
of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk
shall take appropriate steps to effect formal service on Defendant, and the Court will require
Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of
Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer
shall furnish the Clerk with the Defendant's current work address, or, if not known, the
Defendant's last-known address.  This information shall be used only for sending the forms as
directed above or for formally effecting service.  Any documentation of the address shall be
retained only by the Clerk.  Address information shall not be maintained in the court file or
disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the
Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Local
Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

**Dated: July 22, 2026**

**REONA J. DALY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts

satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.